OPINION
{¶ 1} Defendant-appellant Christopher Lee Gray aka Lee Genovese appeals from the decision of the Belmont County Common Pleas Court which sentenced him to the maximum sentence of five years in prison and ordered him to pay restitution to his victims. The issues before us concern the propriety of the prison sentence and the restitution order. For the following reasons, the prison term is affirmed, but the restitution order is reversed and remanded for a hearing clarifying the proper amount of restitution.
 STATEMENT OF THE CASE {¶ 2} In January 2002, Christopher Gray from Painesville, Ohio approached some farmers in Belmont County about buying their cattle. He introduced himself as Lee Genovese of Genovese Trucking and Livestock Co., Inc. of Ashtabula. Gray wrote checks to these farmers totaling over $100,000, and he resold their cattle. All of the checks were returned for insufficient funds. Upon investigation, it was discovered that the address on the checks was not an operating business. It was also revealed that Gray spent seventeen months in prison for a similar offense and was on parole when he committed the offense herein.
 {¶ 3} A complaint was filed on February 1, 2001, resulting in case number 02CR49. The indictment was then filed on April 3, 2002, for theft in violation of R.C. 2913.02(A)(3), which prohibits knowingly obtaining or exerting control over property by deception with purpose to deprive the owners of their property. This offense was an aggravated theft, a third degree felony, due to the fact that the property was valued at more than $100,000. R.C. 2913.02(B)(2). The available sentences for a third degree felony are one, two, three, four, or five years in prison. R.C.2929.14(A)(3).
 {¶ 4} On May 13, 2002, Gray pled guilty as charged. The state and defense jointly recommended the maximum sentence of five years. (Tr. 5, 7). One of the farmers testified at the sentencing hearing. He noted that not only did Gray take the cattle by deception, but he stored them in the transport trailer for about a week until the re-sale causing them to lose between 60 and 100 pounds each. At the conclusion of the hearing, the court sentenced Gray to five years as jointly recommended and ordered him to make restitution to the victims. In a May 17, 2002 judgment entry, the court specifically ordered Gray to pay $11,697.27 in restitution to the victims. Timely appeal followed, and appellant briefed two assignments of error for our review.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 5} Gray's first assignment of error contends:
 {¶ 6} "The trial court erred by failing to consider the purposes and principles of felony sentencing and factors set forth in Chapter 2929 of the Ohio Revised Code."
 {¶ 7} Under this assignment, appellant sets forth a general argument that the trial court failed to consider the seriousness and recidivism factors outlined in R.C. 2929.12. We do not find the contention meritorious for three reasons. First, the court need not use specific language or make findings on the record to evince the requisite consideration of the applicable seriousness and recidivism factors. Statev. Arnett (2000), 88 Ohio St.3d 208, 215. Second, the trial court outlined all of the factors set forth in R.C. 2929.12(B) through (E) and marked which factors it believed were applicable. Third, we need not even address this contention due to the statutory and case law which provides that a defendant cannot appeal the failure to support a sentence when he agreed to the sentence. R.C. 2953.08(D); State v. Palmer (Nov. 19, 2001), 7th Dist. No. 99CA6 (pointing to the doctrines of plea agreements, wavier and invited error); State v. Salsgiver (Aug. 10, 2001), 11th Dist. No. 2000-T-48; State v. Presta (Sept. 18, 2000), 12th Dist. No. CA-2000-02-014, CA-2000-02-018. As appellant concedes in his brief and as the transcript of proceedings establishes, the five-year sentence was jointly recommended. (Tr. 5, 7). Thus, he cannot complain now that the court did not properly consider whether he should have received less than five years.
 {¶ 8} Appellant also argues under this assignment that the record demonstrated that he would respond favorably to community control and that the court failed to make a finding in order to properly deviate from the minimum. However, the court found that community control would not adequately punish the offender or protect the public from future crime and would demean the seriousness of the offense. Most importantly, appellant fails to realize that the R.C. 2929.14(B) factors for deviating from the minimum (demean seriousness or not adequately protect the public) are unnecessary where the offender has previously served time in prison. Here, the parties stipulated that appellant served seventeen months in prison. (Tr. 8). Thus, the minimum sentence argument is without merit.
 {¶ 9} The same rationale set forth above renders meritless appellant's argument that the trial court failed to set forth reasons to support the findings made for imposition of the maximum. As we stated inPalmer, even if the trial court's reasons for imposing the maximum were lacking, there would be no error because appellant jointly recommended such a sentence. "Thus, the court was not required to determine whether deviation from the minimum or imposition of the maximum was proper." Id., citing Salsgiver; also citing State v. Campbell (2000),90 Ohio St.3d 320, 324 (holding that a defendant cannot take advantage of an error which he himself invited or induced). See, also, State v.Bechstein (Mar. 23, 2001), 3d Dist. No. 16-2000-14 (appellate court need not review whether deviation from minimum was performed pursuant to the requirements of R.C. 2929.14(B) where the sentence imposed was jointly recommended); State v. Byerly (Nov. 3, 1999), 3d Dist. No. 5-99-26 (refusing to review the propriety of maximum and consecutive sentences where they were jointly recommended); State v. Street (Sept. 30, 1998), 3d Dist. No. 5-98-9 (refusing to review the propriety of consecutive sentences where they were jointly recommended).
 {¶ 10} Although R.C. 2953.08(A)(1)(a) allows appeal as a matter of right where a maximum sentence is imposed, this division explicitly states that it is subject to the exception set forth in division (D). Pursuant to the plain language of R.C. 2953.08(D), when a sentence is authorized by law and jointly recommended by the defendant and the prosecution, the sentence is not subject to review if it is imposed by the sentencing judge. Authorized by law merely means that it falls within the statutorily set range of available sentences. Salsgiver; 11th Dist. No. 2000-T-48; State v. Bristow (Jan. 29, 1999), 3d Dist. No. 3-98-21. The five-year maximum sentence herein was authorized by law and thus is not reviewable as it was jointly recommended. This assignment of error is therefore overruled.
 {¶ 11} As an aside, we note that at the hearing, the trial court found that this is the worst case of its nature. In giving reasons, which admittedly seem to be reasons for greatest likelihood of committing future crime, the court stated that appellant has an extensive criminal record and he is not responsive to sanctions. In the sentencing entry, although the court placed its reasons after it said "great likelihood" of recidivism, it did proceed to opine that appellant posed the "greatest likelihood" of recidivism in the very next sentence. The reasons given were that appellant minimizes his guilt and has failed to assume responsibility for his actions. The entry also found that appellant committed the worst form of offense. Although the court did notproximately mention that appellant spent seventeen months in prison for a similar offense and committed this offense while on probation, which would have been the best reasons for finding that he posed the greatest likelihood of recidivism, the court had previously checked the parole and prior history boxes in its entry. Because the Supreme Court is currently deciding whether we must review just the transcript, just the entry, or a combination of both, we refuse to continue with this "assuming arguendo" argument as to imposition of the maximum sentence. State v. Comer (Jan 24, 2002), 6th Dist. No. L-9901296 certified as conflict on May 29, 2002 with State v. Williams (2000), 136 Ohio App.3d 570 (3d Dist.). Rather, we simply rely on our above analysis as to the jointly recommended sentence to dispose of this assignment of error.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 12} Gray's second assignment of error provides:
 {¶ 13} "The trial court erred when the appellant was ordered to pay restitution to the victims of the case."
 {¶ 14} At the May 13, 2002 sentencing hearing, counsel was asked if there was anything defense counsel wanted to say on behalf of Gray; counsel advised the court there was one issue. (Tr. 12, 13). Counsel asked to approach the bench, at which time a bench conference occurred off the record. (Tr. 12-13). The court then revealed that an issue was raised regarding settlement in the civil suit and noted that there is a settlement entry in that case. (Tr. 13). The court asked the victim if he understood that "what I can do with restitution here may be bound by what you did in the civil suit?" (Tr. 13). The court proceeded to order that Gray "make restitution to the victims by anything that they have not received * * * I know you may wish to appeal that because there's a settlement entry, but as far as I'm concerned, that should be a part of your criminal sentence that you make restitution for what you did." (Tr. 13-14). Finally, the court admitted the settlement entry from the civil suit and Gray's criminal record as exhibits. (Tr. 14).
 {¶ 15} First, we should note that, although Gray's stipulated criminal record has been placed in the pouch in the back of the transcript, the settlement entry exhibit has not. Rather, there is a letter from the civil plaintiffs' attorney to the prosecutor showing that the funds received by the plaintiffs to date minus expenses total $113,787.80. Because this letter is dated by plaintiffs' attorney on May 13, 2002 and it was not mentioned at the May 13, 2002, 9:00 a.m. hearing, it is obvious that this was not presented as an exhibit or considered by the court. Thus, it was improperly placed by someone in the back of the transcript.
 {¶ 16} The settlement entry which should have been in that letter's place has been attached to appellant's brief as an exhibit. This settlement entry, from Lake County Common Pleas Court case number 02CV209, lists Gray's bank accounts and vehicles which were released to the plaintiffs in settlement of the civil suit (and which were later liquidated to total the $113,787.80 mentioned above). Paragraph 1 of the entry specifically states:
 {¶ 17} "Gray shall be permitted to keep the Cadillac Limousine, $8,300 in cash that was on his person when he was arrested in Geauga County and jewelry. That the 1988 Cadillac Limousine, $8,300 in cash and jewelry are the only assets released from the restraining order dated February 19, 2002. The items are currently in the possession of the Belmont County Sheriff's Department."
 {¶ 18} Later, the civil settlement entry repeats, "The release of items listed in Paragraph 3 herein do not include the Cadillac Limousine, $8,300 in cash, and jewelry listed in Paragraph 1." However, in the May 17, 2002 sentencing entry in case number 02CR49 which is the case before us, the court specifically stated that property seized in case number 02-CR-033 shall be forfeited. From the $8,300 in cash seized from Gray at the time of his arrest, the sheriff was to deduct its fees incurred in seizing various vehicles; the remainder of the money was ordered to be used for restitution. Also, the sheriff was ordered to sell any remaining seized property (which appears from later restitution entries to be two diamond rings) and apply any proceeds to victim restitution. We note that the portion going to the sheriff's department for expenses in confiscating the vehicles is not on appeal. Rather, appellant questions whether plaintiffs can expressly exempt certain funds from the civil suit settlement and then collect these specific funds in the criminal restitution.
 {¶ 19} Pursuant to R.C. 2929.18(A)(1), a financial sanction may include restitution by the offender to the victim in an amount based on the victim's economic loss. "At sentencing, the court shall determine the amount of restitution to be made by the offender. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender." R.C. 2929.18(A)(1). See, also, R.C. 2929.01(M) (defining economic loss).
 {¶ 20} Here, the trial court did attempt to credit Gray with the civil recovery. (Tr. 13, sentencing entry). Gray argues that the court should have further credited him with the items specifically released in the civil settlement entry. His issue presented is thus whether a court can order restitution to be paid from seized property that was specifically released by the plaintiffs/victims in the civil suit against the defendant.
 {¶ 21} Under the plain language of the statute, the court can order restitution regardless of the civil suit settlement as long as it credits any amounts paid toward its determination of economic loss. Thus, a criminal court need not assume that the victim has been fully compensated merely because the victim settled a civil claim with the defendant. From this concept, it logically seems to follow that the source of the funds for criminal restitution is really not a debatable point.
 {¶ 22} Here, the court happened to have access to seized funds and property which it decided should be first used to pay the sheriff's department and then used to pay some of the restitution ordered. In fact, the civil plaintiffs are not receiving the property directly. Instead, it was seized by the police and then forfeited to the state. Thereafter, the court ordered the state to use some of the property to satisfy a portion of the restitution. This procedure has the same practical result (but with more security of payment) than the alternative procedure of releasing the money and property to the defendant and then generally ordering him to pay restitution to the plaintiffs out of an unspecified fund. We hold that the source of the funds to accomplish full criminal restitution is not limited by a civil settlement. Only the actual amount of civil settlement paid acts as an offset or a credit to the criminal defendant. Accordingly, we overrule appellant's argument regarding the order that his seized property be used to pay part of the restitution even though it had been released in a civil suit.
 {¶ 23} However, Gray does raise what appears to be a meritorious issue requiring remand; that is, how did the court arrive at the proper amount of restitution? As aforementioned, the sentencing court ordered Gray to pay $11,697.27 in restitution to the victims in its May 17 entry. However, there is no evidence in the transcript or the submitted exhibits as to how this amount was calculated. Perhaps the court was shown evidence at the off the record bench conference; however, we cannot review such evidence. As Gray argues, the evidence does not confirm that the trial court determined actual loss or damage.
 {¶ 24} The state's recitation of the facts in its brief declares that the checks written by Gray total $132,646. The letter from plaintiff's attorney to the prosecution sets forth $113,787.80 as the amount received by plaintiffs in the civil case. The restitution amount set forth in the court's judgment entry is $11,697.27. Yet, the $132,646 figure is nowhere to be found in the record before us, nor is the $113,787.80 figure. The first time the $11,697.27 appears is in the sentencing entry. One victim testified, but he did not mention the amount lost. The bill of particulars reveals that the state has the returned checks. These checks along with some evidence on the amount of setoff could have been used as evidence at the sentencing hearing to support the restitution order.
 {¶ 25} As per R.C. 2929.18(A)(1), the amount of restitution must be determined at sentencing, which itself requires a hearing. It is well-established that the amount of restitution must be established by a reasonable degree of certainty. See, e.g., State v. Kreischer (Jan. 23, 2002), 5th Dist. No. 01CA04; State v. Hafer (2001), 144 Ohio App.3d 345,348 (4th Dist.); State v. Campbell (1993), 85 Ohio App.3d 510, 512 (12th Dist.); State v. Fyffe (1990), 67 Ohio App.3d 608, 617 (10th Dist.);State v. Williams (1986), 34 Ohio App. 33, 34 (2d Dist.). Without any evidence in the record we cannot review whether the amount of restitution ordered was established by such certainty. Accordingly, the restitution order must be remanded for presentation of evidence at a hearing on the proper amount of initial economic damages and the amount after credit for the amount recovered in the civil settlement. Although it is likely the state can support the amount ordered, we must remand to comply with the law. This assignment of error is accordingly sustained in part.
 {¶ 26} For the foregoing reasons, the decision of the trial court regarding the prison term is hereby affirmed, but the restitution order is reversed and remanded for a hearing clarifying the proper amount of restitution.
Donofrio and Waite, JJ., concur.